UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO.** |
| : | **3:07-cv-421 (VLB)** |
| **MORGAN C. BROWN** : | |
| Defendant. : | **December 28, 2009** |

### MEMORANDUM OF DECISION GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. #40]

Before the Court is the United States' motion for summary judgment [Doc. #40] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, seeking a judgment against the Defendant, Morgan Brown (hereinafter referred to as "Brown") for unpaid federal tax assessments pursuant to 26 U.S.C. § 6672 ("§ 6672"). The Government seeks judgment for income tax assessments against Brown for his role in the failure of TeleConnect Corp. ("TeleConnect") to collect, or truthfully account for, and pay income and Federal Insurance Contributions Act ("FICA") taxes that were withheld, in trust for the United States, from the wages of its employees.

For the reasons stated hereafter, the United States' motion for summary judgment is granted as to its remaining claim.

### BACKGROUND

The following facts are undisputed unless otherwise noted. Brown served as the President of TeleConnect from April 1, 2004 through December 31, 2004

and April 1, 2005 through December 31, 2005.  Additionally, from April 2002 through December 31, 2005, Brown alone determined TeleConnect's financial policy, directed and authorized the payment of bills, authorized payroll checks, guaranteed or co-signed loans, and made federal tax deposits.  Similarly, between October 2003 and December 31, 2005, Brown was solely responsible for preparing, revising, signing, and transmitting TeleConnect's payroll tax returns. TeleConnect has never had a board of directors and Brown and a fellow investor, Benjamin Gaines ("Gaines"), have been its only shareholders.  Gaines purchased a fifteen percent interest in TeleConnect in 2003 by setting up a checking account with $300,000.00 in funds, for which he had the sole check signing authority. This account was separate from another checking account for which Brown had the sole check signing authority.  The majority of Gaines' account was used to purchase equipment for TeleConnect.  Gaines left TeleConnect after eight months with the company in late 2003.

From April 2004 through December 2005, Brown determined whether TeleConnect's taxes would be paid and also determined which payments TeleConnect made. TeleConnect made payments during this time period for installations performed by independent contractors, wages, occasional shipping and rental costs, liability insurance, and equipment.  In turn, TeleConnect failed to make deposits for its Form 941 quarterly employment tax liabilities for the third and fourth quarters of 2004 and the third and fourth quarters of 2005.

On or about May 4, 2005, Brown made a federal tax deposit in the amount of $3,281.35 on behalf of TeleConnect for the company's 2005 second quarter tax liability. [Doc. #42, Exhibit A]. TeleConnect's liability for that quarter however, totaled over $14,000.00, including income and FICA taxes withheld from the wages of the company's employees. Brown did not designate whether TeleConnect's payment was for the trust fund or non-trust fund portion of TeleConnect's Form 941 employer's tax liability. Id. The IRS applied the payment on May 6, 2005 to TeleConnect's non-trust fund liabilities. [Doc. #49, Exhibit 1].

On or about June 6, 2005, TeleConnect filed a Form 941, quarterly tax return, signed by Brown that reported a balance of $17,113.30 due for the third quarter of 2004. On September 6, 2005, the IRS issued a notice of levy to People's Bank, and subsequently received $17,614.00 on September 30, 2005, pursuant to that notice. [Doc. #49, Exhibit 2-3]. On September 30, 2005, the IRS applied $16,187.99 of the levy payment to TeleConnect's non-trust fund Form 941 employer's quarterly tax liability for the second quarter tax period of 2004, and applied $1,426.01 of the levy payment to TeleConnect's non-trust fund Form 941 liability for the first quarter tax period of 2005 Id.

TeleConnect also filed a series of quarterly tax returns in January 2006, signed by Brown, reflecting a balance of: $11,653.43 due for the fourth quarter of 2004; $11,469.54 due for the second quarter of 2005; $13,592.96 due for the third quarter of 2005; and $14,816.72 due for the fourth quarter of 2005.

3

On March 13, 2006, an Internal Revenue Service ("IRS") employee interviewed Brown regarding trust fund recovery penalty assessments pursuant to § 6672 for TeleConnect's unpaid taxes from several periods.  As part of an official report of the interview, Brown attested that he first became aware of TeleConnect's delinquent taxes in April 2004.

On September 25, 2006, a delegate of the Secretary of the Treasury made assessments against Brown for unpaid income and FICA taxes withheld from the company's employees for the tax periods ending September 30, 2004; December 31, 2004; September 30, 2005; and December 31, 2005.  The assessments were made pursuant to § 6672 of the Internal Revenue Code.  On September 25, 2006, the IRS provided Brown with statutory notice of each of the assessments. Similarly, on October 2, 2006, a delegate of the Secretary of the Treasury made an assessment against Brown for TeleConnect's unpaid income and FICA taxes withheld from the employees' wages for the tax period ending June 30, 2005. Brown received statutory notice of the assessment and a demand for its payment on October 2, 2006. This assessment was also made pursuant to § 6672 of the Internal Revenue Code.  The United States asserts that, in total, the pending assessments yield a balance of $60,439.38 plus statutory interest and additions from August 24, 2009. [Doc. # 40, Exhibit 1].

On March 16, 2007, the United States filed a complaint against Brown before this Court pursuant to 26 U.S.C. § 7401 to reduce unpaid federal income tax and trust fund recovery penalty assessments against the Defendant to a

judgment. [Doc. #1]. The Government filed the instant motion as a partial motion for summary judgment on August 26, 2009 to seek an order of judgment in favor of the United States for unpaid federal trust fund tax assessments against Brown pursuant to § 6672 for the tax periods ending September 30, 2004; December 31, 2004; June 30, 2005; September 30, 2005; and December 31, 2005. [Doc. #40].

On September 21, 2009, the Defendant filed his objection to the instant motion noting:

> there are genuine issues as to material facts with regard to the amount of income and Federal Insurance Contributions Act (FICA) taxes withheld from the wages of TeleConnect's employees for the tax periods in question for which the defendant is liable and that have not been paid or collected by the Internal Revenue Service; and that as a matter of law the Plaintiff is not entitled to judgment in the amount sought in Plaintiff's Motion for Summary Judgment.

[Doc. #44]. As addressed fully in the succeeding analysis, Brown claims in his objection, but fails to produce evidence, that certain payments were misapplied. On October 27, 2009 the parties consented to the entry of judgment against Brown for the non-trust fund income tax assessments made against him for the 1986, 1990, 1992, and 1993 tax periods. [Doc. #50]. Accordingly, Teleconnect's trust fund income tax assessments are the only remaining assessments against Brown to be resolved by this Court.

**STANDARD**

In a motion for summary judgment, the burden is on the moving party to establish the absence of genuine issues of material fact in dispute, and that it is

therefore entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 249 (internal quotation marks and citations omitted).  The nonmoving party must present evidence that would allow a jury to find in that party's favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Patterson v. County of Oneida, NY, 375 F.3d 206, 219 (2d Cir.2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff].'" Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson, 477

U.S. at 252)).  The non-moving party, "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted).  A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible.  <u>Ying Jing Gan v. City of N. Y.</u>, 996 F.2d 522, 532 (2d Cir. 1993).

Lastly, pro se litigants are entitled to an "accessible" explanation of Rule 56 of the Federal Rules of Civil Procedure, and the implications of a motion for summary judgment:

> We take this opportunity to briefly discuss the interplay between Rule 56 of the Federal Rules of Procedure ("Rule 56") and the <u>pro</u> <u>se</u> litigant who does not move for summary judgment.  And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that <u>pro</u> <u>se</u> litigants have actual notice, provided in an accessible manner, of the consequences of the <u>pro</u> <u>se</u> litigant's failure to comply with the requirements of Rule 56.

<u>Irby v. New York City Transit Authority</u>, 262 F.3d 412 (2d Cir. 2001).[1]

### ANALYSIS OF THE UNITED STATES' § 6672 CLAIM FOR JUDGMENT

The Internal Revenue Code requires employers to withhold FICA taxes and income taxes from their employees' wages.  <u>See</u> 26 U.S.C. § § 3102(a) and 3402.

---

[1] The Government has provided Brown with accessible notice of the importance of compliance with Rule 56. See [Doc. #41].

Additionally, the Internal Revenue Code states that the "amount of tax so collected or withheld shall be held to be a special fund in trust for the United States" resulting in "trust fund taxes." 26 U.S.C. § 7501(a); See Slodov v. United States, 436 U.S. 238, 242-243 (1978) (noting that taxes withheld pursuant to §§ 3102(a) and 3402(a) are "commonly referred to as 'trust fund taxes'"). Employers must pay these trust fund taxes in addition to FICA taxes that are computed as a percentage of an employer's wages. See 26 U.S.C. § 3111.

The Second Circuit has identified the relevant factors and burden of proof for § 6672 tax liability cases:

> It is well established that [§ 6672] requires two elements to be present before personal liability for unpaid withholding taxes attaches: first, the individual must be a person responsible for the collection and payment of withholding taxes, i.e., he must have the authority to direct the payment of corporate funds; second, the individual's failure to comply with the statute must be willful. The individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that one or both of these elements is not present.

Hochstein v. United States 900 F.2d 543, 546 (2d Cir. 1990) (internal citations omitted). Accordingly, the Government's assessment receives a presumption of correctness that is displaced only if Brown proves by a preponderance of the evidence that 1) he was not responsible for TeleConnect's collection and payment of withholding taxes; or 2) that the nonpayment of taxes was not willful.

As an opposition to the motion before the Court, Brown states in conclusive fashion that there are genuine issues of material facts with regard to the amount of trust fund taxes owed. [Doc. #44]. Brown disputes that he owes

8

the $60,439.38 assessed as his liability.  He contends that the amount does not reflect payments made to reduce his liability, including amounts the IRS collected by levy from TeleConnect's customers and bank accounts.  [Doc. #42].  He also argues that he understood and believed that his payments would be applied to reduce the trust fund portion of TeleConnect's obligation to the IRS.  Id.

Noticeably, the Defendant does not contest his portrayal by the Government as a responsible person for TeleConnect's collection and payment of withholding taxes.  Accordingly, Brown's exertion of unilateral control, with the exception of Gaines brief and limited involvement as an investor, over TeleConnect's finances as the president, majority shareholder, and individual with chief financial decision-making authority establishes that he was the responsible person during the relevant tax periods, within the meaning of § 6672.  See United States v. Rem, 38 F.3d 634,642 (2d Cir. 1994) (identifying an individual's role as an officer, ownership of shares, management in day-to-day affairs, control over bank accounts, and check-signing authority, as relevant factors for § 6672 responsible person analysis).

Brown also fails to dispute facts that indicate that he willfully failed to pay the outstanding tax liability.  The Second Circuit notes that:

> [A] person willfully fails to pay withholding taxes within the meaning of section 6672 when [h]e pays other creditors with knowledge that withholding taxes are due.  The individual's bad purpose or evil motive in failing to collect and pay taxes, moreover, properly plays no part in the civil definition of willfulness.  The Supreme Court cautions, however, that section 6672 cannot be construed to impose liability without fault.  Nor does mere negligence constitute willfulness under the statute.  Rather, willfulness may be established by a showing of

**gross negligence involving a known risk or violation. We have noted, moreover, that willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government.**

U.S. v. McCombs, 30 F.3d 310, 320 (2d Cir. 1994). Brown paid a series of TeleConnect's creditors between April 2004 and December despite his knowledge that withholding taxes were due as of April 2004 [Doc. #40, Exhibits 7-8). These payments demonstrate that his nonpayment of taxes was willful. Brown fails to displace the presumption that these two elements of § 6672 liability are present. Instead, left undisturbed is the government's identification of Brown as a responsible person at TeleConnect who willfully failed to pay the company's withholding taxes during the relevant period.

As a final matter, Brown challenges the amount of judgment by identifying payments that TeleConnect made to address tax liability. In particular, Brown provides evidence of TeleConnect's May 4, 2005 payment in the amount of $3,281.35 and the IRS's levy in the amount of $17,614.00 as payments not reflected by the judgment amount. The Government however, accounts for these payments and notes that they were applied to TeleConnect's non-trust fund liabilities. The Government explains that because the IRS can only collect non-trust fund liabilities from a corporation, but can collect unpaid trust fund liabilities from individuals pursuant to § 6672 even after a corporation no longer exists, the Government maximized its recovery against TeleConnect by distributing payments to non-trust fund liabilities. [Doc. #49]. The Government was entitled to distribute the Defendant's payments in this manner due to his

**10**

failure to specify whether the company's voluntary payment was for the trust fund or non-trust fund portion of TeleConnect's Form 941 employer's tax liability, and the non-voluntary nature of the company's levy payment.  <u>Pike v. United States</u>, 723 F.2d 232, 233 (2d Cir. 1983) (per curiam) (citing <u>Slodov v. United States,</u> 436 U.S. 238, 252 fn. 15 (1978) to affirm a district court's decision that a taxpayer has no say in the allocation of funds to past due taxes when the amount has been forcibly collected, and also citing <u>Hewitt v. United States</u>, 377 F.2d 921, 925 (5th Cir. 1967) to note that a taxpayer's failure to designate voluntary payments permits the IRS to apply funds in a manner that best facilitates tax collection.)

      The Defendant also indicates that he has "other supporting documents regarding other payments and levies." [Doc. #42].  As of the date of this decision however, Brown has not supplemented his memorandum of opposition, moved for leave to file supplemental documents, or requested an extension of time in order to produce the evidence that he claims to possess.  Ultimately, Brown contends he has, but fails to produce evidence that there is a genuine issue of material fact as to the amount of taxes owed.  The Defendant merely states his belief and understanding without providing any factual basis for that belief.  To the extent that the Defendant has produced evidence, it fails to undermine the presumption of correctness that is afforded to an assessment, as the Government has accounted for each of the identified payments.  To be sure, the Defendant has recently entered into a settlement with the Government of another tax liability that is presumably predicated upon an application of the very

payments that he claims were not properly credited to his liability. [Doc. #50]. In sum, the Defendant inappropriately relies on "conclusory statements and unsupported allegations that the evidence in support of the [Government's] motion for summary judgment is not credible." Ying Jing Gan, 996 F.2d at 532.

**CONCLUSION**

The United States' motion for summary judgment [Doc. #40] is GRANTED as to the Plaintiff's remaining claim. Judgment is entered against the Defendant in the amount of $60,439.38, plus statutory interest and additions from August 24, 2009. The Clerk of the Court is directed to CLOSE the case file.

                                            IT IS SO ORDERED.

                                      _____/s/_____

                                      Hon. Vanessa L. Bryant
                                      United States District Judge

Dated at Hartford, Connecticut:  December 28, 2009